GLICK, Trustee for the Albert Glick Revocable Trust, et al., Appellees,

v.

SOKOL et al., Appellants; Liberte Capital Group, LLC, et al., Appellees.

[Cite as *Glick v. Sokol,* 149 Ohio App.3d 344, 2002-Ohio-4731.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–1224.

Decided Sept. 10, 2002.

Swedlow, Butler, Levine, Lewis & Dye Co., L.P.A., and Todd H. Neuman, for appellees.

Eugene F. McShane, for appellants.

BOWMAN, Judge.

{¶ 1} Defendants-appellants, Eric Martin Sokol and Phyllis Sokol, appeal from the Franklin County Court of Common Pleas, which granted summary judgment in favor of plaintiffs-appellees, Albert Glick, acting individually and as trustee of the Albert Glick Revocable Trust.

{¶ 2} In 1998, Investment Solutions Financial Advisors ("Investment Solutions"), a partnership owned by Eric Sokol and Phyllis Sokol, ran television advertisements promoting investment vehicles called viatical settlements. A viatical settlement is an investment contract by which an investor acquires an interest, at a discount, in the life insurance policy of a terminally ill person. When the insured dies, the investor receives the insurance death benefit. The investor's profit is the difference between the discounted purchase price paid to the insured and the death benefit collected from the insurer, minus transaction costs, premiums paid, and other administrative expenses. In response to these advertisements, Albert Glick contacted Investment Solutions. Eric Sokol and Phyllis Sokol visited him at his home and gave him promotional materials about viatical settlements.

{¶ 3} With Eric Sokol's assistance, Glick entered an agreement with and granted power of attorney to Liberte Capital Group ("Liberte Capital"). Pursuant to the agreement, Glick authorized Liberte Capital to locate appropriate viatical settlements, purchase interests in them on Glick's behalf, and pay premiums on the insurance policies. Glick paid $200,000 to Viatical Escrow Services, an entity designated by Liberte Capital to hold Glick's funds in escrow until the funds would be withdrawn to purchase interests in viatical settlements. Pursuant to this agreement, Liberte Capital purchased several viatical settlements for Glick, either on his own behalf or on his behalf as trustee. Glick has not received any return on his investment and he believes he has lost his $200,000 investment.

{¶ 4} By this lawsuit, Glick contended, among other things, that the fractional interests marketed by appellants were securities under Ohio law and that appellants violated R.C. 1707.44(A) by selling them without first complying with the securities registration requirements in R.C. 1707.44(C). Glick argued that he was, therefore, entitled to the statutory remedy of rescission of his investment, pursuant to R.C. 1707.43. The trial court agreed and granted summary judgment in Glick's favor.

{¶ 5} On appeal, appellants assign the following error:

{¶ 6} "The trial court erred in granting summary judgment in favor of plaintiffs on their claim for statutory rescission pursuant to Section 1707.43 Ohio Rev.Code."

{¶ 7}  Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383.  Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.

{¶ 8}  When a motion for summary judgment has been supported by proper evidence, a nonmoving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing that there is a genuine triable issue.  Civ.R. 56(E); *Jackson v. Alert Fire & Safety Equip., Inc.* (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027.  To establish the existence of a genuine issue of material fact, the nonmoving party must do more than simply resist the allegations in the motion. Rather, that party must affirmatively set forth facts that entitle him to relief. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095.  If the nonmoving party "does not so respond, summary judgment, if appropriate, shall be entered against the party."  Civ.R. 56(E).

{¶ 9}  Under current Ohio law, viatical settlements are securities subject to registration.  By Am.Sub.H.B. No. 551, enacted after the transaction at issue in this case, the Ohio legislature amended the Ohio Revised Code "to make life settlement interests subject to the Ohio Securities Law." Am.Sub.H.B. No. 551, Preamble.  Accordingly, as of October 5, 2001, the statutory definition of "security" expressly includes "any life settlement interest."  R.C. 1707.01(B).

{¶ 10}  Glick argues that Am.Sub.H.B. No. 551 merely clarified Ohio law and that viatical settlements were securities prior to the amendment.  In support of his argument, Glick cites Am.Sub.H.B. No. 551 sponsor testimony, in which a legislator stated that "[t]he language amending section 1707.01 of the Ohio Securities act clarifies that an interest in a 'life settlement' constitutes a 'security' under Ohio law."  We note that Ohio has no official legislative history and, consequently, sponsor testimony is of limited value to our analysis.  See *State v. Dickinson* (1971), 28 Ohio St.2d 65, 67, 57 O.O.2d 255, 275 N.E.2d 599.  We conclude that the viatical settlement investments purchased by Glick prior to October 5, 2001, were not securities subject to registration requirements under Ohio law.

{¶ 11}   The prior version of R.C. 1707.01, which was applicable when viatical settlements were purchased on Glick's behalf, provided as follows:

{¶ 12}   "(B) 'Security' means any certificate or instrument that represents title to or interest in, or is secured by any lien or charge upon, the capital, assets, profits, property, or credit of any person or of any public or governmental body, subdivision, or agency.   It includes shares of stock, certificates for shares of stock, membership interests in limited liability companies, voting-trust certificates, warrants and options to purchase securities, subscription rights, interim receipts, interim certificates, promissory notes, all forms of commercial paper, evidences of indebtedness, bonds, debentures, land trust certificates, fee certificates, * * * certificates or written instruments in or under profit-sharing or participation agreements or in or under oil, gas, or mining leases, or certificates or written instruments of any interest in or under the same, receipts evidencing preorganization or reorganization subscriptions, preorganization certificates, reorganization certificates, certificates evidencing an interest in any trust or pretended trust, any investment contract, any instrument evidencing a promise or an agreement to pay money, warehouse receipts for intoxicating liquor, and the currency of any government other than those of the United States and Canada, but section 1707.01 to 1707.45 of the Revised Code do not apply to bond investment companies or to the sale of real estate."

{¶ 13}   Although viatical settlements were not enumerated among the list of securities, Glick argues that viatical settlements nonetheless fit within the general definition.   We disagree.

{¶ 14}   In *State v. George* (1975), 50 Ohio App.2d 297, 302–303, 4 O.O.3d 259, 362 N.E.2d 1223, this court construed the term "security" under the applicable version of R.C. 1707.01 and concluded that an investment is a "security" when it meets the following conditions:

{¶ 15}   "* * * '(1) [A]n offeree furnishes initial value to an offeror, and (2) a portion of this initial value is subjected to the risks of the enterprise, and (3) the furnishing of the initial value is induced by the offeror's promises or representations which give rise to a reasonable understanding that a valuable benefit of some kind, over and above the initial value, will accrue to the offeree as a result of the operation of the enterprise, and (4) the offeree does not receive the right to exercise practical and actual control over the managerial decisions of the enterprise.' "

{¶ 16}   In *George*, investors purchased distributor contracts.   Pursuant to the contracts, Bonanza Production Company ("Bonanza") provided the investors with pre-recorded eight-track cassette tapes.   Id. at 298, 4 O.O.3d 259, 362 N.E.2d 1223.   The investors manufactured tapes for resale to Bonanza, and Bonanza assumed the sole responsibility for marketing the distributor's manufactured

tapes and paying the distributor for the sales. Id. The *George* court concluded that the offeree's funds were "being used by the offeror [Bonanza] in the operation and conduct of the business [Bonanza Productions]," as the investment funds were used for things such as royalty payments, advertising-sales management, and training. Id. at 303, 4 O.O.3d 259, 362 N.E.2d 1223. These expenditures, the court concluded, were "within the broad general area of operational functions of the conduct of this enterprise," and the investors furnished capital for these expenditures to Bonanza based upon the investors' reasonable understanding that they would profit as a result of Bonanza's operation of the enterprise. Id.

{¶ 17} Glick notes that, by order dated August 20, 1999, the Ohio Division of Securities ("division") concluded that the viatical settlements sold by Eric Sokol to Glick were securities under the test articulated in *George*. Glick further notes that, on September 3, 1999, the division issued a pronouncement in which it concluded that in virtually all instances viatical settlements are securities subject to the regulatory framework of the Ohio Securities Act.

{¶ 18} Although we afford due deference to interpretations by administrative agencies with substantive expertise, we decline to follow the division's determination that Glick's viatical settlements were securities under the Ohio Securities Act prior to the effective date of Am.Sub.H.B. No. 551. We disagree with the division's conclusion that viatical settlements are securities under the *George* test.

{¶ 19} The division determined that, in the case of viatical settlements, the investor's initial value is subject to the risks of the enterprise because the money is used to pay the fees and commissions of the viatical companies and the premiums to maintain the insurance policies. The third part of *George*, however, requires a reasonable understanding by the investor that a valuable benefit over and above the initial value will accrue to the benefit of the investor *as a result of the operation of the enterprise*. In the case of viatical settlements, however, payment of fees, commissions, and premiums cannot increase the value of the investor's interests in a viator's life insurance policy.

{¶ 20} In *George*, the profitability of the investment was impacted by the operation of the enterprise; the investor's profit depended on Bonanza's use of the investor's outlay of capital to train personnel and market the product. Investor profit would theoretically increase as a result of Bonanza's efforts. By contrast, the only variable that can impact the profitability of the viatical settlements at issue is the timing of the death of the insured. To the extent that Glick's investment outlay paid for the fees and commissions of appellants and the viatical company, and for the premiums to maintain the insurance policies, Glick was merely paying for administrative services and, by purchasing interests on Glick's behalf and paying premiums, appellants and/or Liberte Capital Group

were merely fulfilling their reciprocal obligations under their agreement with Glick. We conclude that a viatical settlement promoter's efforts to perform the services it promised does not constitute the risks of the enterprise under *George*.

{¶ 21} Moreover, the record demonstrates that, at most, appellants played a limited role in the enterprise. Appellants were involved in selling the investment concept but not in the escrow process or the selection of viatical settlements. Eric Sokol testified that he did not know where the money invested by Glick would have been placed, and he did not know anything about what would have happened with the money once it was held in escrow. Furthermore, the agency agreement authorizing the purchase of viatical settlements was between Glick and Liberte Capital, and the correspondence to Glick regarding his investment in specific insurance policies was signed by an investor services manager from Liberte Capital. If, as the division determined, the viatical companies constitute an enterprise, the *George* analysis appears to apply to Liberte Capital and not to appellants.

{¶ 22} Our conclusion that the viatical settlements at issue were not securities is further bolstered by the legislature's clear intent for prospective application of Am.Sub.H.B. No. 551. Am.Sub.H.B. No. 551 specifically provides that the *addition* of "life settlement interests" to the list of express securities under R.C. 1707.01(B) "shall take effect six months after the effective date of this act." Am.Sub.H.B. No. 551, Section 3. The legislature further provided that "[a]ny person that, on the effective date of this act, transacts business in this state as a viatical settlement provider, viatical settlement representative, or viatical settlement broker may continue to do so pending approval of the person's application for a license, if the person applies for the license during the six-month period immediately following the effective date of this act." Am.Sub.H.B. No. 551, Section 4. The division's determination that Glick's investments were securities under the *George* test flies in the face of the legislative intent for prospective addition of viatical settlements to the list of securities under R.C. 1707.01.

{¶ 23} Because we conclude that the viatical settlements purchased for Glick were not securities, we sustain appellants' assignment of error. The judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

LAZARUS, J., concurs.

BROWN, dissents.

Brown, Judge, dissenting.

{¶ 24}  I respectfully dissent from the majority opinion and concur with the reasoning of the trial court in this case.