RUMBAUGH, Appellee,

v.

OHIO DEPARTMENT OF COMMERCE, Appellant.

[Cite as Rumbaugh v. Ohio Dept. of Commerce, 155 Ohio App.3d 288, 2003-Ohio-6107.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–1335.

Decided Nov. 18, 2003.

Price & Jones, Grey W. Jones and Kerri L. McCloskey, for appellee.

Jim Petro, Attorney General, Cheryl R. Hawkinson and Thomas J. Rocco, Assistant Attorneys General, for appellant.

WATSON, Judge.

{¶ 1} This is an appeal from the judgment of the Franklin County Court of Common Pleas reversing the decision of the Ohio Department of Commerce, Division of Securities ("division"). For the reasons that follow, we reverse.

{¶ 2} Kenneth W. Rumbaugh ("Rumbaugh") is a licensed securities salesman, also licensed to sell variable annuities and accident, health, and life insurance. He describes himself as a certified estate, business, and economic analyst. There are two transactions cited in the division's order, the subject of this appeal. These transactions involve viatical settlement contracts ("viatical[s]"). A viatical is an investment vehicle by which an investor acquires an interest in the life insurance policy of a terminally ill person at a discounted price. When the insured dies, the investor receives the insurance death benefit. The investor's profit is the difference between the discounted purchase price and the death benefit collected from the insurer, minus transaction costs, premiums paid, and other administrative expenses. Viaticals allow the terminally ill insured to use the policy's money during his or her lifetime for health care costs.

{¶ 3} In 1998, several clients approached Rumbaugh and asked him to look into investing in viaticals for them. The individuals involved in this case are Margie M. Robey and Robert M. Clark. Rumbaugh did not contact them. Rather, Robey was referred to Rumbaugh by a long-time acquaintance, and Clark was referred by Rumbaugh's client. Prior to this time, Rumbaugh was allegedly not familiar with viaticals and did not sell them on any regular basis.

{¶ 4} In response to his clients' inquiry, Rumbaugh attended seminars, undertook due diligence, and investigated various companies to determine which ones

would be the best for his clients. Rumbaugh contacted insurance and securities regulators in several states and consulted with better business bureaus to obtain information about different companies engaged in the viatical business. Based on his due diligence, Rumbaugh determined that American Benefits, a Florida-based company, and Financial Information Exchange were the best companies for his clients. The parties stipulated to the following facts:

"(1) Margie M. Robey ('Robey') and Robert M. Clark ('Clark') are natural persons and residents of Ohio.

"(2) Kenneth W. Rumbaugh ('Rumbaugh') is a natural person who conducted business in the State of Ohio during all time periods relevant to this order and is a licensed securities salesperson.

"(3) American Benefits Services, Inc. ('American Benefits') is a company whose principal place of business is in Florida and whose business purpose is the packaging and marketing of viatical settlements.

"(4) On or about December 29, 1998, Rumbaugh met with Robey to discuss viatical settlement contracts to be provided by American Benefits.

"(5) On or about April 8, 1999, Rumbaugh met with Clark to discuss viatical settlement contracts to be provided by American Benefits.

"(6) Rumbaugh gave Robey and Clark applications for viatical settlement contracts with American Benefits.

"(7) Rumbaugh explained to Robey and Clark the viatical settlement package offered by American Benefits and the risks involved.

"(8) Rumbaugh advised Robey and Clark that they would receive a certificate from American Benefits.

"(9) Rumbaugh provided Robey and Clark with copies of American Benefits' participation disclosure.

"(10) Rumbaugh assisted Robey and Clark in completing the applications for the viatical settlement contracts with American Benefits.

"(11) Rumbaugh accepted checks from Robey and Clark for the viatical settlement contracts with American Benefits and forwarded the checks to Financial Information Exchange, but received no compensation for such transactions.

"(12) Rumbaugh, on behalf of Robey and Clark, forwarded approximately nine viatical settlement contracts on [sic]."

{¶ 5} In late 2000, the division sent a notice to Rumbaugh, informing him of allegations against him, namely that the division considered viaticals to be securities under Ohio law that must be registered prior to being "sold." An investigative hearing was held on January 29, 2001, by Desiree Shannon, enforcement counsel for the division, to determine whether the above transaction

violated the Ohio Securities Act. Rumbaugh testified at this hearing. On August 15, 2001, the division issued an order stating that Rumbaugh had sold six viaticals on behalf of American Benefits to Robey at a cost of $25,000 per contract. The order further provided that Rumbaugh had sold three viaticals to Clark, also at $25,000 per contract. The division concluded that the viaticals fell within the definition of a "security" under Ohio law, that these were neither registered nor exempt from registration, and that Rumbaugh had sold them in violation of Ohio law. The order stated that the division intended to issue a cease-and-desist order and notified him of his right to a hearing. Rumbaugh requested a hearing. The hearing was held on December 11, 2001. The parties agreed to present their arguments to the hearing officer by way of briefs.

{¶ 6} On April 18, 2002, the hearing officer issued a report and recommendation ordering Rumbaugh to cease and desist from acts and practices that violate Ohio law, R.C. Chapter 1707, namely selling unregistered securities. The commissioner confirmed the report and recommendation and issued the order. Rumbaugh appealed to the Franklin County Court of Common Pleas. The trial court reversed. The trial court found that based on the Tenth Appellate District case of *Glick v. Sokol*, 149 Ohio App.3d 344, 2002-Ohio-4731, 777 N.E.2d 315, the viaticals were not securities. The division filed the instant appeal. The division asserts the following assignments of error:

"1. The lower court erred when it failed to determine that viatical settlement contracts are securities pursuant to R.C. 1707.01(B).

"2. The lower court erred in determining that the order of the division of securities was not supported by reliable, probative and substantial evidence and was not in accordance with law."

{¶ 7} The trial court must review the agency's order to determine whether it is supported by reliable, probative, and substantial evidence and whether it is in accordance with law. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111–112, 17 O.O.3d 65, 407 N.E.2d 1265. However, the appellate court's review is more limited than that of the trial court. *Fehrman v. Ohio Dept. of Commerce, Div. of Securities* (2001), 141 Ohio App.3d 503, 506–507, 751 N.E.2d 1089:

"* * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, *i.e.*, being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment. * * *" Id., citing *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 8} However, on questions of law, an appellate court's review is plenary. *Fehrman,* 141 Ohio App.3d at 506, 751 N.E.2d 1089. In the instant appeal, the question of whether viaticals were securities at the relevant time is a question of law. In this case, the trial court reversed the division and found that the viaticals were not securities based on this court's precedent in *Glick,* supra. In relying on *Glick,* the trial court held that the division's finding of a "security" prior to the enactment of Am.Sub.H.B. No. 551 was not in accordance with Ohio law. We disagree.

{¶ 9} R.C. 1707.44(C)(1) provides that no person shall knowingly and intentionally sell, cause to be sold, offer for sale, or cause to be offered for sale any security that is not exempt under various code sections and has not been registered by description. Currently, the definition of "security" contained in R.C. 1707.01(B) expressly includes "life settlement interests." Therefore, there is no dispute that viatical-settlement contracts are *now* regulated by the division. However, at the time of the allegations against Rumbaugh, the definition did not expressly include "life settlement interests." The definition included numerous other terms, such as shares of stock, certificates for shares of stock, warrants and options to purchase securities, any *investment contract,* and any instrument evidencing a promise or an agreement to pay money. R.C. 1707.01(B), amended by Am.Sub.H.B. No. 551 (effective October 5, 2001).

{¶ 10} In determining whether a particular scheme constitutes a security under Ohio law, courts look to the nature of the investment scheme in light of the Blue Sky Law's broad policy to prevent fraudulent exploitation of the investing public. *In re Columbus Skyline Securities, Inc.* (1996), 74 Ohio St.3d 495, 498, 660 N.E.2d 427. The Ohio Blue Sky Law is remedial in nature and was "drafted broadly to protect the investing public from its own imprudence as well as the chicanery of unscrupulous securities dealers." Id. Further, the legislature intended the administrative body with expertise in the area to have the ability to address unforeseen variations in factual circumstances and recognize "the creativity of unscrupulous securities dealers intent on defrauding Ohio investors." Id. at 499, 660 N.E.2d 427. The securities market is constantly evolving. Id.

{¶ 11} It is well established that courts must defer to an agency's administrative interpretation, particularly when that agency is empowered to enforce the statute at issue, such as the division is, in dealing with securities matters. *Leon v. Ohio Bd. of Psychology* (1992), 63 Ohio St.3d 683, 687, 590 N.E.2d 1223; *State ex rel. McLean v. Indus. Comm.* (1986), 25 Ohio St.3d 90, 25 OBR 141, 495 N.E.2d 370 ("Although we afford due deference to interpretations by administrative agencies with substantive expertise, we decline to follow the division's determination that Glick's viatical settlements were securities under the Ohio Securities Act".). *Glick,* 149 Ohio App.3d 344, 2002-Ohio-4731, 777 N.E.2d 315, at

¶ 18. With respect to viaticals, the division announced in its 98:3 issue of the Ohio Securities Bulletin, a quarterly publication of the division, that it considered viaticals to be securities under the test of *State v. George* (1975), 50 Ohio App.2d 297, 4 O.O.3d 259, 362 N.E.2d 1223. However, Rumbaugh maintains that he was not aware of this pronouncement.

{¶ 12} In this case, if the viaticals constitute securities, they would fall under the category of investment contracts. An investment contract exists when (1) an offeree furnishes initial value to an offeror; (2) a portion of this initial value is subjected to the risks of the enterprise; (3) the furnishing of initial value is induced by the offeror's promises or representations that give rise to a reasonable understanding that a valuable benefit of some kind, over and above the initial value, will accrue to the offeree as a result of the operation of the enterprise; and (4) the offeree does not receive the right to exercise practical and actual control over the managerial decisions of the enterprise. *George,* supra, 50 Ohio App.2d at 302–303, 4 O.O.3d 259, 362 N.E.2d 1223.

{¶ 13} As stated above, in *Glick,* this court determined that the viaticals at issue did not constitute securities under the test set forth in *George.* *Glick,* supra. In that case, the defendants were partners in an investment firm that ran television advertisements promoting viaticals. Plaintiff contacted defendants in response to the ads, and defendants subsequently came to plaintiff's home and provided promotional materials regarding certain viaticals. Plaintiff entered an agreement with Liberte Capital Group, which was to locate appropriate companies, purchase interests in them, and pay premiums. Plaintiff paid $200,000 to an escrow firm designated by Liberte, and that escrow firm subsequently purchased viatical settlements for plaintiff. Plaintiff brought suit after he did not receive a return on his investment. He claimed that the viatical settlements were unregistered and nonexempt securities and, therefore, defendants' sale to plaintiff was in violation of R.C. 1707.44(A). The trial court entered summary judgment for plaintiff. This court reversed and held that viaticals were not securities.

{¶ 14} Under the *George* test, the *Glick* court found that the investor's initial value in a viatical settlement is not subject to the risks of the enterprise merely because the investors paid fees, commissions, and premiums. Id. The court found that the only variable affecting the investment was the mortality of the insured. There was no reasonable understanding that a valuable benefit above the initial value would accrue based on the operation of the enterprise. The court stated the following at ¶ 20:

> "[T]he only variable that can impact the profitability of the viatical settlements at issue is the timing of the death of the insured. To the extent that [plaintiff's] investment outlay paid for the fees and commissions of appellants and the viatical company, and for the premiums to maintain the insurance

policies, [plaintiff] was merely paying for administrative services and, by purchasing interests on [plaintiff's] behalf and paying premiums, [defendants] and/or Liberte Capital Group were merely fulfilling their reciprocal obligations under their agreement with [plaintiff]."

{¶ 15} Further, "a viatical settlement promoter's efforts to perform the services it promised does not constitute the risks of the enterprise." Id. The court further opined that amending the definition of a security to include "life settlement interests" was intended to apply only prospectively. The court stated:

"Am. Sub.H.B. No. 551 specifically provides that the *addition* of 'life settlement interests' to the list of express securities under R.C. 1707.01(B) 'shall take effect six months after the effective date of this act.' * * * The legislature further provided that '[a]ny person that, on the effective date of this act, transacts business in this state as a viatical settlement provider, viatical settlement representative, or viatical settlement broker may continue to do so pending approval of the person's application for a license, if the person applies for the license during the six-month period immediately following the effective date of this act.' * * * The division's determination that Glick's investments were securities under the *George* test flies in the face of the legislative intent for prospective addition of viatical settlements to the list of securities under R.C. 1707.01." (Emphasis sic.) *Glick,* 149 Ohio App.3d 344, 2002-Ohio-4731, 777 N.E.2d 315, at ¶ 22.

{¶ 16} Several other states have found that viaticals are investment contracts, under a test similar to *George,* and therefore constitute securities. *Siporin v. Carrington* (2001), 200 Ariz. 97, 23 P.3d 92 (viatical settlement was an investment contract and therefore a security; mortality of viator is one factor but what truly determines profitability is the realization over time of an outcome predicted by the seller based on life expectancy, soundness of the insurer, the actions needed to keep the policies in effect for face amount, and the insurer's unconditional liability under the policy); *Hill v. Dedicated Resources, Inc.* (D.Kan. July 12, 2000) No. 99–C–1714, 2000 WL 34001915 (viatical is investment contract and therefore a security); *Michelson v. Voison* (2003), 254 Mich.App. 691, 658 N.W.2d 188 (viatical settlement is a security even though Michigan's security Act did not expressly include the term in the definition of a "security" at the time in question); *Poyser v. Flora* (Ind.App.2003), 780 N.E.2d 1191 (viatical-settlement contracts were investment contracts and therefore securities even before Indiana specifically added them to the enumerated list contained in the Indiana securities Act); but, see, *Securities & Exchange Comm. v. Life Partners, Inc.* (C.A.D.C. 1996), 87 F.3d 536 (holding that viatical settlements are not securities where the investor was not dependent on the efforts of others but instead relied entirely upon the mortality of the insured). We find the facts of the present case

analogous to those in the several states cited above and decline to follow *Life Partners.*

{¶ 17} We now turn to whether the viaticals in this case meet the *George* factors. The first prong requires the person to invest money. Here, there is no question that Robey and Clark paid a specific sum of money for investment in the viaticals. The second prong requires that the invested money be subject to the risk of the enterprise. Rumbaugh argues that the second prong is not met. We disagree. The investor's money was used for typical business expenses of the offeror. A portion of the money was used to pay fees and commissions of the viatical companies, e.g., American Benefits, as well as their sales staff, e.g., Rumbaugh,[1] and escrow agent. The money is also used to pay expenses or premiums to maintain the policy. Further, the initial value was subject to risks including the fact that the insurance company could go bankrupt, the insured might live longer than expected and more money would be needed to pay premiums, or someone could embezzle money. Therefore, under the facts of this case, we find that the viaticals were subject to the risk of the enterprise.

{¶ 18} The third prong requires that the investor have a reasonable understanding based on the offeror's representations that she or he will realize a measure of profit as a result of the operation of the enterprise. The opinions in *Glick* and *Life Partners* concluded that it is the viator's life expectancy alone that determines the return on the investment and has nothing to do with the operation of the enterprise. However, we find this case to be distinguishable from *Glick* in that respect. In this case, American Benefits' participation disclosure promised the investors their initial investment plus a return of 15 percent simple interest *in the event* the viaticals failed to mature at 36 months. This is significant in that the investors were promised a return in addition to their initial investment, *regardless* of the time of death of the viator. These circumstances were not present in *Glick.* Further, as the division stated in its bulletin, viatical investors invest *because* they reasonably understand that their investments will yield returns anywhere from 15 to 50 percent. This understanding is derived from company literature and relied on by investors. Accordingly, we hold that the third prong of the *George* test is satisfied.

{¶ 19} The fourth prong asks whether the investor receives the right to exercise practical and actual control over the managerial decisions of the enterprise. If not, this weighs in favor of finding a security. Here, Robey and Clark relied on Rumbaugh to find the best companies for investment purposes. After

---

1. However, in this particular case, Rumbaugh maintains that he received nothing in the form of payment for these transactions. However, this is not typical and does not affect the analysis in a general sense.

Robey and Clark gave Rumbaugh the investment money, Rumbaugh forwarded the money to Financial Information Exchange, a clearinghouse. The escrow agent was then notified that the money was available, and it was subsequently invested. Robey and Clark had no control over the selection of people whose policies were purchased, the prices paid for the policies, the escrow agent who would hold the funds, or any other managerial decision of the company.[2] Therefore, the fourth factor of the *George* test is satisfied. Accordingly, the division's first assignment of error is sustained.

{¶ 20} Since we have determined that viaticals are securities under the facts of this case, we must determine whether the division's order that Rumbaugh actually "sold" unregistered securities in violation of law is supported by reliable, probative and substantial evidence. The trial court never reached the issue of whether a "sale" occurred because it found that the viaticals were not securities in the first place.

{¶ 21} The Ohio Revised Code defines a sale to include every disposition, or attempt to dispose, of a security or of an interest in security. R.C. 1707.01(C)(1). It also includes "a contract to sell, an exchange, an attempt to sell, an option of sale, a solicitation of a sale, a solicitation of an offer to buy, a subscription, or an offer to sell, directly or indirectly, by agent, circular, pamphlet, advertisement, or otherwise." Id. "Sell" means any act by which a sale is made. R.C. 1707.01(C)(2). The division argues that Rumbaugh attempted to sell or solicited a sale by providing active assistance to Clark and Robey in their purchase of viaticals. Rumbaugh argues that providing Clark and Robey with brochures of information is insufficient to make him a seller. We find the division's argument persuasive.

{¶ 22} Contrary to Rumbaugh's assertion that he merely provided brochures to Robey and Clark, Rumbaugh himself testified that he performed due diligence to determine what company Robey and Clark should invest in and that they relied on his recommendation. He provided applications to Robey and Clark and helped them fill in the necessary information. He provided participation disclosure forms to Robey and Clark, explained the risks of investment, and received checks from them that he forwarded to the clearinghouse. Rumbaugh signed the participation disclosure as an agent of American Benefits. Rumbaugh insists that he did not sell within the meaning of the statute because he received no compensation for his efforts. However, the statute does not require compensation in order for a sale to occur. Based on Rumbaugh's active assistance and encouragement to Robey and Clark with respect to investment in American

---

2. Although Robey and Clark did indeed have one year to get their money back if they chose to do so, this is not meaningful control with respect to how the money was invested.

Benefits, we find the division's conclusion that he sold unregistered securities in violation of Ohio law to be supported by reliable, probative, and substantial evidence.

{¶ 23} Rumbaugh also argues that based on the language in *Glick,* Am.Sub.H.B. No. 551 was intended to mean that viaticals were never securities prior to the amendment and that therefore he did not sell unregistered securities in violation of Ohio securities law. The court finds that the language in *Glick* regarding legislative intent was merely one factor within the court's analysis and is not controlling in this case. As stated previously, effective October 5, 2001, life settlement interests were expressly included in the definition of a "security" under R.C. 1707.01(B). Section 3 of Am.Sub.H.B. No. 551 specifically states that sections 1 and 2 of the Act, to include life settlement interests as securities, "shall take effect six months after the date of this act." Further, "[a]ny person that, on the effective date of this act, transacts business in this state as a viatical settlement provider, viatical settlement representative, or viatical settlement broker may continue to do so pending approval of the person's application for a license, if the person applies for the license during the six-month period immediately following the effective date of this act." Am.Sub.H.B. No. 551, Section 4.

{¶ 24} However, the legislature did not address whether viaticals were ever considered securities *prior to* the amendment. The statute does not state that inclusion of "life settlement interests" means that viaticals were never securities. It is just as plausible to interpret the amendment as being a codification or clarification of existing securities law. The court again notes that the division interpreted viaticals as securities in 1998. Therefore, we must afford due deference to the division's determination at the time these transactions occurred, since it is empowered to enforce Ohio securities law. *Leon,* supra, 63 Ohio St.3d at 687, 590 N.E.2d 1223. The legislature intended the administrative body with expertise in the area to have the ability to address unforeseen variations in factual circumstances and recognize "the creativity of unscrupulous securities dealers intent on defrauding Ohio investors." *In re Columbus Skyline,* supra, 74 Ohio St.3d at 499, 660 N.E.2d 427. Accordingly, we find that the language in the amendment providing for a six-month grace period *from the effective date of the amendment,* October 5, 2001, is not determinative of the legislative intent with respect to sales that occurred in 1998 and 1999. Accordingly, the division's second assignment of error is sustained.

{¶ 25} Based on the foregoing, we find that the viaticals at issue meet the four-prong test announced in *George,* supra. Robey and Clark invested money that was subject to the risks of the enterprise, namely, how the enterprise would conduct itself. Here, embezzlement occurred and it went into liquidation. Further, Robey and Clark were promised their initial investment plus 15–percent

return even if the contract failed to mature within 36 months. Robey and Clark had no practical control over their investments after their money was paid to Rumbaugh. Therefore, the viaticals in this case constitute securities. Further, Rumbaugh "sold" unregistered securities within the meaning of the statute. Rumbaugh was an active participant in Robey's and Clark's investments, and they relied on his efforts. Finally, the statutory amendment to include viaticals within the definition of a "security" and the licensing requirements does not state that viaticals were never securities. Because the statute is silent as to acts and events occurring prior to the amendment, we defer to the division's interpretation that viaticals were securities at the time in question.

{¶ 26} We acknowledge that the trial court was simply relying on *Glick* in rendering its decision. However, for the reasons stated in this opinion, we find that *Glick* is not determinative of this case.

{¶ 27} Accordingly, the division's two assignments of error are sustained, the judgment of the trial court is reversed, and this cause is remanded to that court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

PETREE, P.J., and BROWN, J., concur.