OPINION
{¶ 1} Larry and Joyce Boomershine appeal from a judgment of the Montgomery County *Page 2 
Court of Common Pleas, which entered summary judgment in favor of American Viatical Services, LLC ("AVS") and USBank, N.A., ("USBank") on the Boomershines' claims for the sale of unregistered securities and conspiracy to commit fraud.
 {¶ 2} For many years, the Boomershines conducted business at a bank in Farmersville, Ohio. The bank changed names and ownership several times, and eventually became USBank. The Boomershines met Timothy Martin when he worked at the Farmersville USBank branch as an investment advisor. However, Martin was employed by MDS Securities, not by USBank.
 {¶ 3} Martin eventually left MDS Securities and established his own investment firm, Pacifico-Martin Associates. While working at Pacifico-Martin, Martin approached the Boomershines to discuss a new investment opportunity in viatical settlements. "A viatical settlement is an investment contract by which an investor acquires an interest, at a discount, in the life insurance policy of a terminally ill person. When the insured dies, the investor receives the insurance death benefit. The investor's profit is the difference between the discounted purchase price paid to the insured and the death benefit collected from the insurer, minus transaction costs, premiums paid, and other administrative expenses." Glick v. Sokol, 149 Ohio App.3d 344,2002-Ohio-4731, 777 N.E.2d 315, at ¶ 2.
 {¶ 4} In 1999, the Boomershines invested $110,000 in viaticals that were sold to them by Martin on behalf of LifeTime Capital, Inc. ("LifeTime"). In 2002, AVS was employed to administer the collection of premium payments and the distribution of policy disbursements on behalf of LifeTime. USBank served as an escrow agent, holding an Asset Purchase Holding Account for purchases of policies, a Premium Reserve Account for the payment of premiums, and a Benefit Payment Account for the payment of life insurance policy proceeds. USBank collected flat fees for the administration of these accounts. *Page 3 
 {¶ 5} The Boomershines eventually came to believe that they had been misled about the risks and costs of their investment in viaticals through LifeTime because the insured outlived his life expectancy by more than one year, at which point the Boomershines were required to assume the premium payments on the policy. On March 22, 2004, they filed suit against LifeTime, AVS, Pacifico-Martin, USBank, Martin, and another former employer of Martin, Alexander Chase Co. The complaint alleged securities violations and conspiracy to commit fraud. The complaint was amended several times, and various motions to dismiss and for summary judgment were filed by the parties. The proceedings against LifeTime were stayed indefinitely when LifeTime went into receivership, and the proceedings against Martin were stayed when he went into bankruptcy. Pacifico-Martin and Alexander Chase Co. also apparently became insolvent and were dismissed from the case.
 {¶ 6} On July 10 and 14, 2006, respectively, AVS and USBank filed motions for summary judgment on the Boomershines' claims. On November 21, 2006, the Boomershines filed a memorandum in opposition. On April 16, 2007, the trial court granted AVS's and USBank's motions for summary judgment.
 {¶ 7} The Boomershines raise three assignments of error on appeal. The first two assignments are related, and we will address them together.
 {¶ 8} I. "THE TRIAL COURT ERRED IN CONDUCTING [SIC] THAT US BANK, N.A. IS NOT LIABLE TO THE PLAINTIFFS/APPELLANTS PURSUANT TO R.C. § 1707.43
AND R.C. § 1707.44(C)(1)."
 {¶ 9} II. "THE TRIAL COURT ERRED IN CONDUCTING [SIC] THAT AMERICAN VIATICAL SERVICES, LLC WAS NOT LIABLE TO PLAINTIFFS/APPELLANTS PURSUANT *Page 4 
TO R.C. § 1707.43, R.C. § 1707.44(C)(1), AND R.C. § 1707.44(J)."
 {¶ 10} The Boomershines contend that AVS and USBank participated in the unlawful sale of securities by selling the viatical settlements at issue in this case and are liable to them for their losses.
 {¶ 11} R.C. Chapter 1707 sets forth the requirements for the lawful sale of securities. R.C. 1707.43 provides that a contract for sale that violates these provisions "is voidable at the election of the purchaser." It further provides:
 {¶ 12} "The person making such sale or contract for sale, and every person that has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to the purchaser * * *."
 {¶ 13} R.C. 1707.44(C)(1) prohibits one from knowingly selling, causing to be sold, offering for sale, or causing to be offered for sale an unregistered security that is not exempt from registration.
 {¶ 14} There is some disagreement among the parties and in the case law as to whether the viatical settlements were securities, and thus subject to Chapter 1707's registration requirements, when the Boomershines purchased these investments in 1999. At that time, "life settlement interests," such as viatical settlements, were not specifically enumerated in the definition of a "security" contained in R.C. 1707.01(B). R.C. 1707.01(B) was amended in October 2001 to include life settlement interests in the definition of a security. It is arguable, however, that such investments constituted securities prior to October 2001 under the more general category of "any investment contract," which was then included in the definition of a security. There are conflicting opinions as to whether these contracts satisfied the definition of an investment contract. See, e.g., Glick, supra, andRumbaugh v. Ohio Dept. of Commerce, 155 Ohio App.3d 288, 2003-Ohio-6107,800 N.E.2d 780, applying the definition of an investment contract set forth in State v. George (1975), *Page 5 50 Ohio App.2d 297, 362 N.E.2d 1223.
 {¶ 15} To resolve the issues presented in this appeal, we need not determine whether the viatical settlements sold to the Boomershines were investment contracts and, thus securities. Even assuming that the viaticals were securities, the Boomershines failed to create a genuine issue of material fact that AVS or USBank was involved in thesale of those policies, as required to establish a violation of R.C.1707.44(C)(1) or R.C. 1707.43. At most, AVS and USBank collected and held premiums from investors if the insured lived beyond a predetermined time, facilitated the payments necessary to keep the policies in effect, and assisted in the distribution of insurance proceeds. Although AVS and USBank may have been aware of investor complaints about the investment when premium payments became due, the Boomershines have presented no evidence that AVS or USBank was under any obligation to investigate or act upon those complaints. Moreover, the Boomershines' involvement with AVS's and USBank's administration of the viatical settlements cameafter they had invested in that instrument. Although the Boomershines came to know Tim Martin because he offered investment advice to USBank customers, by their own admission they knew that Martin was not a bank employee and that the bank did not stand behind the products he sold. As such, there is no genuine issue of material fact that AVS or USBank influenced the Boomershines' decision to purchase the viaticals.
 {¶ 16} With respect to AVS only, the Boomershines make an additional argument that AVS violated R.C. 1707.44(J). R.C. 1707.44(J) provides that "[n]o person, with purpose to deceive, shall make, issue, publish, or cause to be made, issued, or published any statement or advertisement as to the value of securities, or as to alleged facts affecting the value of securities, or as to the financial condition of any insurer of securities, when the person knows that such statement or advertisement is *Page 6 
false in any material respect."
 {¶ 17} The Boomershines assert that premium notices which came from "LifeTime Capital, Inc. Premium Billing Department c/o [AVS]" violated R.C. 1707.44(J). The premium notices explained that premiums would become due if the investment had not matured (due to the death of the insured) by a certain date, which had been established when the policy was purchased. They went on to state that, "[w]hile your investment has not matured, it is important to realize that your overall return, even after payment of this premium amount[,] should be attractive and competitive with similar conservative investments."
 {¶ 18} Even assuming that the statements in the premium notices can be attributed to AVS, the Boomershines presented no evidence that AVS had a purpose to deceive or knew of any falsity in the statements. As such, there is no genuine issue of material fact as to whether AVS violated R.C. 1707.44(J).
 {¶ 19} The first and second assignments of error are overruled.
 {¶ 20} III. "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF AMERICAN VIATICAL SERVICES, LLC AND US BANK, N.A. ON PLAINTIFFS'/ APPELLANTS' CLAIMS FOR CIVIL CONSPIRACY."
 {¶ 21} The Boomershines claim that AVS and USBank engaged in a civil conspiracy to assist LifeTime in defrauding investors. With respect to AVS, this claim in based on its issuance of premium notices after it knew that LifeTime was under investigation and by the aforementioned description of viatical investments as "attractive and competitive with similar conservative investments" in letters about the premiums. With respect to USBank, the Boomershines' claim that the bank was involved in the conspiracy because its employee, Tim Martin, sold them the policy and *Page 7 
because its logo appeared on documents related to the viaticals.
 {¶ 22} To establish a claim of civil conspiracy, a plaintiff must prove: (1) a malicious combination; (2) involving two or more persons; (3) causing injury to person or property; and (4) the existence of an unlawful act independent from the conspiracy itself. James v. Bob RossBuick, Inc., 167 Ohio App.3d 338, 345, 2006-Ohio-2638, 855 N.E.2d 119,124-125, ¶ 25; Werthmann v. DONet, Inc., Montgomery App. No. 20814,2005-Ohio-3185, ¶ 93. "The malice portion of the tort is `that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.'" Gibson v. CityYellow Cab Co. (Feb. 14, 2001), Summit App. No. 20167, quotingGosden v. Louis (1996), 116 Ohio App.3d 195, 219, 687 N.E.2d 481.
 {¶ 23} Because we agree with the trial court's conclusion that no statutory violations occurred, the underlying unlawful act, if any, must be the alleged conspiracy to defraud.
 {¶ 24} The elements of fraud are: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. Cohen v. Lamko, Inc. (1984),10 Ohio St.3d 167, 169, 462 N.E.2d 407.
 {¶ 25} With respect to AVS, the trial court concluded that the Boomershines had failed to establish that AVS was more than a billing company or, more importantly, that it had joined in a conspiracy to defraud them. The court noted that AVS did not have any contact with LifeTime until more than two years after the sale of the viatical settlements. It further found that the Boomershines failed to establish any reliance on the premium notices, which they were already contractually *Page 8 
obligated to pay, and that the premium notices were not material to the purchase of the viatical settlements. Indeed, Larry Boomershine admitted that, by the time he began to receive premium notices from AVS, he was already becoming suspicious about the investment. He even admitted that he had no facts, other than his own assumptions, to establish a connection between LifeTime or Martin and AVS. Thus, summary judgment was properly granted to AVS on the fraud and conspiracy claims.
 {¶ 26} With respect to USBank, the court concluded that the bank acted as an escrow agent, but that there was no evidence that the Boomershines relied on any representations from USBank about the viatical settlements. The Boomershines understood that USBank's role was limited to that of an escrow agent. The court also concluded that the Boomershines had not established a reasonable belief that Martin had been an employee of USBank. These conclusions are also supported by the record. The Boomershines failed to produce any documents regarding the viatical settlements that contained a USBank logo, and they admitted that Martin's arrangement when he was working at the USBank branch made it clear that USBank "doesn't want anything to do with the guy selling this." When they were purchasing the viatical settlements, Mr. Boomershine admitted that he received a flyer which stated that Martin was an employee of Pacifico-Martin Associates. With respect to the relationships — contractual or otherwise — between AVS, USBank, LifeTime, and Martin, Boomershine admitted that the connections he alleged were "only in [his] own mind." This evidence, and the absence of evidence establishing any involvement by USBank in the sale of the viatical settlements, support the trial court's conclusion that there was no genuine issue of material fact that USBank had engaged in conspiracy to commit fraud.
 {¶ 27} The third assignment of error is overruled. *Page 9 
 {¶ 28} The judgment of the trial court will be affirmed
 BROGAN, J. and DONOVAN, J., concur. *Page 1