# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 12-20652

————

United States Court of Appeals
Fifth Circuit

**FILED**

November 8, 2013

Lyle W. Cayce
Clerk

RAINIER DSC 1, L.L.C.; RAINIER DSC 2, L.L.C.; RAINIER DSC 3, L.L.C.; RAINIER DSC 4, L.L.C.; RAINIER DSC 5, L.L.C.; RAINIER DSC 6, L.L.C.; RAINIER DSC 7, L.L.C.; RAINIER DSC 8, L.L.C.; RAINIER DSC 9, L.L.C.; RAINIER DSC 11, L.L.C.; RAINIER DSC 13, L.L.C.; RAINIER DSC 14, L.L.C.; RAINIER DSC 15, L.L.C.; RAINIER DSC 16, L.L.C.; RAINIER DSC 18, L.L.C.,

Plaintiffs–Appellants

v.

RAINIER CAPITAL MANAGEMENT, L.P.; RAINIER DSC ACQUISITION, L.L.C.; RAINIER PROPERTIES, L.P.; RAINIER PROPERTIES G.P., L.L.C.; FOUNDATION SURGERY AFFILIATES, L.L.C.; FOUNDATION SURGERY AFFILIATE OF SOUTHWEST HOUSTON, L.L.P.; FOUNDATION SURGERY AFFILIATE OF SOUTHWEST HOUSTON, L.L.C.; WAYNE ALANI, MD; EDDIE MATSE, MD; CHARLOTTE ALEXANDER, MD; THOMAS PARR, MD; CARL HICKS, MD; VINCENT PHAN, MD; GREGORY HOOVER, MD; TIMOTHY SITTER, MD; LIN JONES, MD; EDWIN TAEGEL, MD; STAN JONES, MD; RAY VALDEZ, MD; EUGENE LOU, MD; JAMES ALBRIGHT, MD; MARVIN LERNER, MD; EUGENE ALFORD, MD; JAMES MARTIN, MD; PAUL BRINDLEY, MD; J. CARY MOOREHEAD, MD; GARY CARD, MD; BRADFORD PATT, MD; NEWTON DUNCAN, MD; STANFORD SHOSS, MD; JOSEPH EDMONDS, MD; JOHN YOO, MD; JOHN JONES, MD; MARVIN CHANG, MD; JAMES LAI, MD; ROBERT SICKLER, MD,

Defendants–Appellees

————

Appeal from the United States District Court
for the Southern District of Texas

————

No. 12-20652

Before SMITH, PRADO, and ELROD, Circuit Judges.

PER CURIAM:*

This case arises out of the district court's dismissal of several defendants before ordering the remaining defendants to arbitrate Plaintiffs' claims. While this Court exercises interlocutory jurisdiction over "an order refusing a stay," because no such order has been issued we dismiss for lack of jurisdiction.

## I.  FACTUAL BACKGROUND

The property that forms the basis of this dispute—a surgical and imaging facility in Houston—was purchased by Foundation Surgery Affiliate of Southwest Houston, LLP ("Southwest") on April 18, 2000.  In the second quarter of 2007, Southwest began marketing the property for sale.  On October 17, 2007, Southwest converted from a Texas limited liability partnership, an LLP, to a Texas limited liability company, an LLC.  The twenty-nine individual defendant doctors practiced as members of Southwest.

On February 21, 2008, Southwest LLP and Rainier Capital Acquisitions, LP[1] entered into a Purchase and Sale Agreement for the property.  On March 24, 2008, the parties executed an Amendment to the Purchase and Sale Agreement substituting Southwest LLC as the proper selling party in light of the conversion.  On May 20, 2008, Rainier Capital Acquisitions, LP assigned all its interest in the Purchase Agreement and Sale Agreement to Rainier DSC Acquisitions, LLC ("Rainier DSC").

Rainier DSC intended to sell tenant-in-common interests in the property, which would allow multiple investors to invest a percentage of money

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Rainier Capital Acquisitions, LP is not a named defendant.

to own a partial interest in the property. Rainier DSC marketed the tenant-in-common interests through a Private Placement Memorandum (the "PPM"). The PPM was used as the marketing document for potential investors. It outlined the parties to the transaction, the risks of the investment, and described the property. The PPM also identified the seller of the building and the sole tenant of the property as the same entity—Southwest. The PPM explained that Rainier Properties, L.P. ("Rainier Properties") would manage the property. The twenty-nine physician members of sole tenant Southwest provided medical services at the property. Notably, the PPM did not include any reference to Rainier Property Management GP, LLC ("Rainier GP")—the only named Rainier defendant the court did not order to arbitration.

On May 23, 2008, Rainier DSC purchased the property from Southwest. Rainier DSC also entered into a Lease Agreement with Southwest for a term of fifteen years. Additionally, Rainier DSC entered into a property management agreement with Rainier Properties to manage the property. The Lease Agreement did not contain an arbitration provision.

On May 23, 2008, Rainier DSC sold fractional tenant-in-common interests to investor entities Rainier DSC 1, LLC, Rainier DSC 2, LLC, Rainier DSC 3, LLC, Rainier DSC 4, LLC, Rainier DSC 5, LLC, Rainier DSC 8, LLC, Rainier DSC 9, LLC, Rainier DSC 13, LLC,[2] Rainier DSC 14, LLC, and Rainier DSC 15, LLC. As part of the investment transactions, each investor signed (1) a Purchase Agreement with Rainier DSC for the purchase of its tenant-in-common interest in the property, and (2) an Assignment whereby each tenant-in-common agreed to be bound by the Tenants in Common Agreement and the Management Agreement. On June 20, 2008, Rainier DSC sold additional

---

[2] Rainier DSC 11, LLC, is listed as a plaintiff but is neither included in the chronology of events provided by the parties nor listed specifically in the text of Plaintiffs' brief.

No. 12-20652

tenant-in-common interests to investor entities Rainier DSC 6, LLC, Rainier DSC 7, LLC, Rainier DSC 16, LLC, and Rainier DSC 18, LLC, (collectively, with the above Rainier investors, "the Plaintiffs"). The Tenants in Common Agreement, the Property Management Agreement, the Purchase Agreement, and the Assignment and Assumption Agreements that Rainier DSC, Rainier Capital Management, LP, and Rainier Properties signed contained arbitration agreements. Rainier GP did not have any written agreement with the Plaintiffs.

Southwest, the tenant, paid rents due under the lease between June 2008 and October 2010. In November 2010, Southwest began making partial rent payments. Later, it stopped paying rent and vacated the property.

Defendant–Appellee Foundation Surgery Affiliates, LLC[3] ("FSA") was not a party to the real estate transactions. There was no contract between the Plaintiffs and FSA.

## II. PROCEDURAL BACKGROUND

In May 2012, the Plaintiffs sued the delinquent tenant, Southwest, numerous Rainier entities, the twenty-nine individual doctors that are the members of Southwest, and FSA in state court under several different theories of liability.

Plaintiffs' claim against the Rainier defendants is that they defrauded the Plaintiffs in connection with the issuance of the "tenant-in-common" shares. The claims stem from the fact that the Rainier defendants provided Plaintiffs with the PPM.

---

[3] A different, but similarly named entity is referenced a few time throughout the record. However, it seems that Foundation Surgery Affiliate, *Inc.*, was not only not a party, but that it was no longer an entity when the building was sold in 2008. It had become Foundation HealthCare Affiliates, LLC. HealthCare owns all of Foundation Surgery Affiliates, LLC, and it in turn owns all of Foundation Surgery Holdings, LLC.

No. 12-20652

The arbitration agreements the Plaintiffs seek to enforce are in the PPM in the documents between only Rainier and the Plaintiffs. Plaintiffs do not argue that anyone other than the Rainier defendants had agreements to arbitrate.

The case was removed to the district court on June 15, 2012. On July 13, 2012, the district court set a status conference date for later in the month. On July 17, 2012, the four Rainier defendants[4] filed an Opposed Motion to Compel Arbitration. Significantly, they did not request or otherwise mention a stay in their motion.

On July 23, 2012, the scheduled status conference took place. The district court spoke with the parties for approximately three hours. The court inquired into the basis for the Plaintiffs' claims against FSA. The court elicited that the thrust of the Plaintiffs' claims against FSA and the individual doctors came from a sentence from the PPM that stated "[t]he partners of Tenant include approximately twenty-nine physicians and Foundation Surgery Affiliates." Southwest, as the tenant, was the only defendant party on the Lease. The Plaintiffs acknowledged before the district court that they had no direct claims against FSA. Instead, the claim's basis was an alter ego theory.

The district court interlocutorily dismissed FSA[5] after Plaintiffs' counsel conceded that FSA was not on the lease and there was no other agreement between the Plaintiffs and FSA. The only claims against Rainier GP were for alter ego and piercing the corporate veil. There was no direct cause of action

---

[4] Rainier Capital Management, LP, Rainier DSC, Rainier Properties, and Rainier GP.

[5] The district court interlocutorily dismissed Southwest as well. However, later, when the district court issued an order dismissing several parties with prejudice, it did not include Southwest—only FSA, Rainier Capital Manager, LLC, and Rainier GP.

5

No. 12-20652

against Rainier GP.    Further, Rainier GP was not a signatory to an arbitration agreement with the Plaintiffs. The court's order also directed the Rainier defendants to submit to the court a written primer on the identity and role of the defendants in the case.

On July 31, the Plaintiffs filed their response to Rainier's originally opposed Motion to Compel Arbitration.    Plaintiffs stated that if the Rainier defendants would all agree to submit to arbitration, Plaintiffs would stop trying to avoid arbitration.    The Plaintiffs' response also stated that the FAA required a stay of proceedings.    Three weeks later, the court held another scheduled status conference.    After the district court further questioned Plaintiffs' counsel about claims against particular defendants, the court ordered Rainier Capital Management, LP, Rainier DSC, and Rainier Properties to arbitration.    The district court dismissed with prejudice the claim against the fourth Rainier defendant, Rainier GP.[6]    The court also dismissed with prejudice the Plaintiffs' claim against FSA.

### III. DISCUSSION

As the appellants, the Plaintiffs bear the burden of establishing our appellate jurisdiction. *Martin v. Halliburton*, 618 F.3d 476, 481 (5th Cir. 2010).

Generally, courts of appeals have jurisdiction over only "final decisions" of the district court. 28 U.S.C. § 1291.    However, there are several exceptions that permit immediate appeal of an adverse determination.    One exception is laid out in § 16(a) of the FAA, which provides that an appeal may be taken

---

[6] It also purported to dismiss Rainier Capital Manager, LLC because it was only the manager of DSC Acquisitions.    The court said that it was "going to respect its corporate form; and it's not responsible for what it manages" after Plaintiffs' counsel was unable to articulate a cause of action against it.    Rainier Capital Manager, LLC, however, while mentioned in the initial pleading, was apparently not a named party.    Much confusion arose because of the name similarity with Rainier Capital Management, LP.

from an "*order* refusing a stay of any action under section 3 of this title."  9 U.S.C. § 16(a)(1)(A) (emphasis added).   "By that provision's clear and unambiguous terms, any litigant who asks for a stay under § 3 is entitled to an immediate appeal from *denial of that motion*—regardless of whether the litigant is in fact eligible for a stay." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 627 (2009) (emphasis added).

The triggering event for interlocutory jurisdiction—the issuance of an order refusing a stay—has not occurred here.  It is undisputed that the district court has not issued an order denying Plaintiffs' request for a stay.   Instead, Plaintiffs argue that the court's orders dismissing FSA, Rainier Capital Manager, LLC, and Rainier GP were "de facto denials" of their request for a stay. We disagree.  Plaintiffs cite no authority for its argument that the district court constructively denied their request.

Plaintiffs correctly state that the reason orders denying arbitration or a stay pending arbitration are immediately appealable while orders granting the same are not is to ensure that "private agreements to arbitrate are enforced according to their terms." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010).  The district court correctly ordered the Plaintiffs and the remaining Rainier defendants[7]—those parties who had signed agreements to arbitrate—to arbitration.  As to those defendants, the district court has taken no action other than to require and accept a status update from the parties regarding their selection of an arbitrator.  Thus, the district court has not undermined the policy of preferring arbitration.  The district court, rather than de facto denying the stay request, has actually de facto granted the request by

---

[7] Rainier DSC, Rainier Capital Management, LP, and Rainier Properties, LP.

No. 12-20652

not taking any forward action between the parties to the arbitration agreement.

We note that it is feasible that the district court overlooked the request because Plaintiffs did not file a motion requesting a stay. Instead, Plaintiffs requested a stay within their response to Rainier's Motion to Compel Arbitration. As discussed above, it is undisputed that Rainier did not move for or otherwise request a stay in its Motion to Compel Arbitration. Thus, the district court, in granting Rainier's Motion to Compel Arbitration, could easily have assumed it had addressed the only issue before it on those documents. Further evidence that Plaintiffs' stay request was not considered, much less denied, is reflected in the district court's docket entry. After hearing arguments August 20, 2012, the district court noted that it had heard argument on "all pending motions." Thus, it did not think it had a motion to stay pending. Regardless, the Plaintiffs have not met their burden of demonstrating that the district court issued "an order refusing a stay."[8]

## IV. CONCLUSION

For the foregoing reasons, we DISMISS for want of jurisdiction.

---

[8] We note that nothing precludes the Plaintiffs from appealing the district court's dismissal of FSA, Rainier Capital Manager, LLC, and Rainier GP after a final judgment is entered. *See* Fed. R. Civ. P. 54(b); *see also Askanase v. Livingwell, Inc.*, 981 F.2d 807, 810 (5th Cir. 1993) ("When an action involves multiple parties, any decision that adjudicates the liability of fewer than all of the parties [is] . . . not appealable unless certified by the district judge under Rule 54(b)."). (citation omitted). The order does not mention Rule 54(b), state that there is no just reason for delay, or indicate an intent that the order be a final and immediately appealable judgment.