[Cite as *Dabney v. Metro Appraisal Group, Inc.*, 2018-Ohio-4601.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106917**

---

**KENNETH DABNEY**

PLAINTIFF-APPELLANT

vs.

**METRO APPRAISAL GROUP, INC.**

DEFENDANT-APPELLEE

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-17-885277

**BEFORE:** Celebrezze, J., E.A. Gallagher, A.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 15, 2018

**ATTORNEY FOR APPELLANT**

Dennis A. Rotman
1360 East 9th Street, Suite 600
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Samuel A. Meadows
Frank Leonetti
Brian D. Sullivan
Reminger Co., L.P.A.
1400 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115


FRANK D. CELEBREZZE, JR., J.:

{¶1}    Plaintiff-appellant, Kenneth Dabney ("appellant"), brings the instant appeal challenging the trial court's judgment granting the motion to dismiss filed by defendant-appellee, Metro Appraisal Group, Inc. (hereinafter "Metro"). Specifically, appellant argues that he sufficiently alleged viable causes of action for breach of contract and negligence in his amended complaint, and that the trial court erred in determining that his claims were time-barred. After a thorough review of the record and law, this court affirms.

### I.    Factual and Procedural History

{¶2} Appellant and his former wife, Denise Dabney (hereinafter "Denise"), owned a home in Shaker Heights, Ohio. After appellant and Denise initiated divorce proceedings, both parties sought refinancing for the home from Wells Fargo Bank. Denise submitted a mortgage

loan refinancing application to Wells Fargo. Wells Fargo hired Metro to conduct an appraisal of the home pursuant to the refinancing request.

{¶3} Metro contacted Denise and advised her that Wells Fargo requested an appraisal of the home pursuant to the refinancing application she submitted to Wells Fargo. Denise advised appellant, via email, that Metro's appraisal of the home would be conducted.

{¶4} Metro arrived at the home on July 23, 2015, to perform the appraisal. Appellant was present at the home at this time. Metro's employees informed Denise that they were conducting the appraisal on her behalf only. Denise introduced the Metro employees to appellant. The record reflects that this was the first interaction between Metro and appellant.

{¶5} Although appellant did not have any interactions with Metro before the July 23, 2015 appraisal, he did communicate with Wells Fargo. Wells Fargo informed appellant that he needed to pay for the appraisal of the home. Pursuant to this request, appellant tendered a payment of $500 to Wells Fargo.

{¶6} On July 29, 2015, Denise informed appellant that she received final approval for refinancing of the home from Wells Fargo. Wells Fargo contacted appellant and advised him that although his refinancing application was proceeding/pending, he needed to have an appraisal of the home completed in order to finalize the application process. Appellant notified Wells Fargo that Denise had already obtained refinancing, and opined that his refinancing application was moot. Appellant alleged that as a result of Denise completing the refinancing process and Metro's breach of its duty owed to appellant, he was unable to obtain refinancing and retain ownership of the home.

{¶7} Metro completed three appraisal reports for the home. The reports were completed for Wells Fargo's use in the refinancing process. The cover sheets of the three reports contain

the address of the home, and specify that the reports are "For: Wells Fargo Bank." The three reports indicate that the intended use of the appraisal reports was for Wells Fargo. No other intended users were identified by Metro. Furthermore, the three appraisal reports provide, in relevant part:

> the intended user of this appraisal report is the Lender. The intended use is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated scope of work, purpose of the appraisal, reporting requirements of this appraisal report form, and definition of market value, no additional intended users are identified by the appraiser.

Finally, all three reports designate Wells Fargo as the "Lender."

{¶8} Appellant believed that Metro's conduct during the appraisal process caused him to lose ownership of the home. As a result, he initiated civil proceedings against Metro.

{¶9} On August 30, 2017, in Cuyahoga C.P. No. CV-17-885277, appellant, acting pro se, filed a complaint against Metro. Therein, appellant alleged that Metro (1) failed to perform its contractual duties, causing appellant financial harm; (2) breached the duty it owed to appellant by falsifying a legal document; and (3) breached "several industry codes," including the American Society of Appraisers Principles of Appraisal Practice and Code of Ethics. Appellant alleged that Metro's document falsification and breach of its duty resulted in damage to him, economic hardship, and an inability to maintain ownership of the house. Appellant sought more than $15,000 in compensatory damages, costs, and attorney fees.

{¶10} On September 25, 2017, Metro filed an answer and a motion to dismiss. In its motion to dismiss, Metro argued that appellant's claims were barred by the two-year statute of limitations set forth in R.C. 2305.10, and that appellant failed to state a claim upon which relief could be granted. Metro emphasized that appellant did not have a contractual relationship with Metro.

**{¶11}** Appellant filed an amended complaint on October 3, 2017. Therein, appellant alleged that Metro (1) breached its contractual duty and the duty it owed appellant pursuant to the Uniform Standards of Professional Appraisal Practice ("USPAP"); (2) breached its duty by falsifying a legal document; and (3) breached several industry codes. Appellant alleged that as a proximate cause of Metro's actions and negligence, he was not able to maintain ownership of the house and suffered other economic hardships. Appellant sought more than $15,000 in compensatory damages, costs, and attorney fees.

**{¶12}** On October 12, 2017, the trial court determined that Metro's motion to dismiss the original complaint was moot based on appellant's subsequent filing of his amended complaint. On October 16, 2017, Metro filed an answer to appellant's amended complaint and a Civ.R. 12(B)(6) motion to dismiss. Again, Metro asserted that appellant's claims were time-barred and that appellant failed to establish the existence of a contractual relationship with Metro.

**{¶13}** On October 23, 2017, appellant filed a brief in opposition to Metro's motion to dismiss. Therein, he argued that there was, in fact, a contractual relationship between himself and Metro. In support of his argument, appellant asserted that he was identified as the "Borrower/Client" in one of Metro's appraisal reports.[1] Furthermore, appellant argued that the allegations in his amended complaint reflect that Wells Fargo hired Metro to perform two separate appraisals — one for Denise and one for appellant. In support of this argument, appellant emphasized that there were two different file numbers listed on the cover sheets of the appraisal reports. One appraisal report listed the file number as 70122324; this report listed Denise as the "Borrower/Client." The other two reports listed the file number as 70138352; one of these reports listed Denise as the "Borrower/Client" and the other report listed appellant as the

"Borrower/Client." Finally, appellant argued that the two-year statute of limitations set forth in R.C. 2305.10(A) is inapplicable and that his claims are governed by the four-year statute of limitations set forth in R.C. 2305.09(D) and/or the five-year statute of limitations for fraud claims set forth in R.C. 2305.09(C).

**{¶14}** On February 8, 2018, the trial court granted Metro's motion to dismiss, concluding that Metro did not owe a duty of care to appellant, there was no privity of contract between Metro and appellant, and that appellant's claims were time-barred by the two-year statute of limitations set forth in R.C. 2305.10(A). It is from this judgment that appellant filed the instant appeal on March 8, 2018. He assigns one error for review:

    I.   The trial court erred in granting [Metro's] motion to dismiss.

## II. Law and Analysis

### A. Standard of Review

**{¶15}** This court reviews a trial court's ruling on a Civ.R. 12(B)(6) motion de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5, citing *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136. In applying the de novo standard of review, this court independently reviews the record without affording deference to the trial court's judgment. *Bandy v. Cuyahoga Cty.*, 8th Dist. Cuyahoga No. 106635, 2018-Ohio-3679, ¶ 10, citing *Herakovic v. Catholic Diocese of Cleveland*, 8th Dist. Cuyahoga No. 85467, 2005-Ohio-5985, ¶ 13.

> In order for a trial court to dismiss a complaint under Civ.R. 12(B)(6) for failure to state a claim upon which relief may be granted, it must appear beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle the plaintiff to relief. *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d

---

[1] The other two appraisal reports listed Denise as the "Borrower/Client."

491, 2006-Ohio-2625, ¶ 11, 849 N.E.2d 268, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975).

In resolving a Civ.R. 12(B)(6) motion, a court's factual review is confined to the four corners of the complaint. *McKee v. Univ. Circle, Inc.*, 8th Dist. Cuyahoga No. 102068, 2015-Ohio-2953, ¶ 12. Within those confines, a court must accept as true all material allegations of the complaint and make reasonable inferences in favor of the nonmoving party. *Id.* "'[A]s long as there is there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.'" *Id.*, quoting *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145, 573 N.E.2d 1063 (1991).

*Bandy* at ¶ 11-12.

## B. Breach of Contract

{¶16} Appellant argues that the trial court erred by granting Metro's motion to dismiss his breach of contract claim because he alleged a viable breach of contract claim in his amended complaint.

{¶17} A plaintiff must establish the following four elements in order to recover on a claim for breach of contract: (1) the existence of a binding contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages resulting from the breach. *N. Chem. Blending Corp. v. Strib Industries, Inc.*, 8th Dist. Cuyahoga No. 105911, 2018-Ohio-3364, ¶ 58, citing *Corsaro v. ARC Westlake Village, Inc.*, 8th Dist. Cuyahoga No. 84858, 2005-Ohio-1982, ¶ 20, and *Am. Sales, Inc. v. Boffo*, 71 Ohio App.3d 168, 175, 593 N.E.2d 316 (2d Dist.1991).

**{¶18}** In his amended complaint, appellant alleged that Metro breached the contractual duty it owed to appellant. However, appellant's complaint failed to allege that he entered into an oral or written agreement with Metro. In fact, appellant's complaint specifically acknowledges that he had no contact with Metro, either before or after July 23, 2015, when the appraisal was conducted on Denise's behalf. *See* Amended Complaint at ¶ 4 ("[Metro], nor [its] agents or employees, *at no time contacted [appellant] prior to July 23, 2015*") (Emphasis added.); *Id.* at ¶ 9 ("On July 23, 2015, an appraiser from Metro arrived at the residence *without prior contact with* [*appellant*]") (Emphasis added.); *Id.* at ¶ 18 ("Upon receiving the purported appraisal, [appellant] informed Wells Fargo that he had never been contacted by Metro"). The only interaction appellant had with Metro, its agents, or employees was on July 23, 2015, and appellant failed to allege that he entered into an agreement or contract with Metro during this interaction.

**{¶19}** Appellant further contends that a contractual relationship was established between himself and Metro based on the fact that he was listed as the "Borrower/Client" in one of Metro's appraisal reports. This assertion is directly contradicted by the allegations in the amended complaint.

**{¶20}** The amended complaint alleged, in relevant part,

[o]n or about July 31, 2015, Wells Fargo informed [appellant] that an appraisal was completed for Wells Fargo, on behalf of [appellant] as an [i]ntended [u]ser, on July 23, 201[5]. Wells Fargo stated that it would forward a copy of the appraisal to [appellant] via email * * * which appraisal *incorrectly listed [appellant's] name as the "Borrower/Client" due to the fact that Metro had not performed an appraisal for Wells Fargo on [appellant's] behalf.*"

(Emphasis added.)  Amended Complaint at ¶ 17.  In other words, although appellant was listed as a "Borrower/Client" on the appraisal report that Wells Fargo forwarded to him, appellant knew that his name was erroneously listed in the report because Metro had not conducted an appraisal on his behalf for Wells Fargo.

{¶21} After reviewing the record, we find that the trial court properly granted Metro's motion to dismiss appellant's breach of contract claim.  The three documents that appellant attached to his amended complaint were the three appraisal reports that Metro prepared on behalf of Wells Fargo and for Wells Fargo's use.  These appraisal reports are not contracts, much less contracts executed between Metro and appellant.

{¶22} Because the amended complaint did not assert that a contract existed between appellant and Metro, the complaint failed to allege all the elements of a breach of contract claim.  Accepting the allegations in the amended complaint as true, we conclude that appellant did not enter into a contract with Metro and, thus, Metro did not breach any contract or contractual duty.

### C.  Negligence

{¶23} Appellant further contends that the trial court erred by granting Metro's motion to dismiss his negligence claim.  As noted above, the trial court concluded that Metro owed no duty of care to appellant, and that Metro only owed a duty to Wells Fargo.

{¶24} In order to establish a claim for negligence, a plaintiff must establish that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the plaintiff suffered an injury and damages as a direct and proximate result of that breach.  *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680, 693 N.E.2d 271 (1998).

{¶25} In challenging the trial court's judgment, appellant argues that "a contractual relationship did in fact exist [between Metro and appellant], and therefore a duty of care was

owed by [Metro] to [a]ppellant." Appellant's brief at 5. As noted above, Metro and appellant did not enter into a contract or any oral or written agreement. Accordingly, a contractual relationship did not exist between appellant and Metro, and Metro did not owe appellant a contractual duty of care.

{¶26} In order to prove duty, appellant was required to demonstrate a relationship between himself and Metro. This relationship may lead to a duty in a negligence claim. Absent this relationship, however, "there is no duty on behalf of [a defendant] to refrain from acting negligently towards [a plaintiff]." *Bope v. A.W. Chesterton Co.*, 8th Dist. Cuyahoga No. 85215, 2005-Ohio-5432, ¶ 6.

{¶27} In *Bope*, this court affirmed the trial court's judgment granting the defendants' motion to dismiss plaintiffs' negligence or fraud-based claims, concluding that the claims "have one gaping hole in that *they establish no connection whatsoever between [plaintiffs] and [defendants]*." (Emphasis added.) *Id*. at ¶ 7. In the instant matter, like *Bope*, we find that the allegations in appellant's amended complaint fail to establish any connection whatsoever between appellant and Metro.

{¶28} The only encounter between appellant and Metro occurred on July 23, 2015, when appellant met and escorted the Metro appraiser as he conducted an appraisal of the home for Wells Fargo and on Denise's behalf. Accordingly, accepting the allegations in the amended complaint as true, we conclude that appellant failed to allege all the elements of a negligence claim. Appellant can prove no set of facts to support his negligence claim that would entitle him to relief, and the trial court properly granted Metro's motion to dismiss appellant's negligence claim.

### D. USPAP

{¶29} To the extent that appellant relies on the USPAP or the USPAP's definition of "intended user" in order to establish the existence of a contract with Metro, a contractual duty that Metro owed appellant, or duty of care that Metro owed appellant, appellant's reliance on the USPAP is misplaced.

{¶30} In his amended complaint, appellant appeared to allege that he was an intended user of Metro's appraisal reports pursuant to the USPAP. *See* Amended Complaint at ¶ 23. This allegation is directly refuted by the language of the appraisal reports, which appellant attached to his amended complaint and submitted in support thereof.

{¶31} The appraisal reports explicitly and unequivocally provide that (1) the intended user of Metro's appraisal report is "the Lender/Client," (2) the intended use of the appraisal report is "to evaluate the property that is the subject of this appraisal for a mortgage finance transaction," and (3) "[n]o additional Intended Users are identified by [Metro]." All three appraisal reports identify Wells Fargo as both the "Lender" (page 2) and "Lender/Client" (page 3). The cover pages (page 1) of all three appraisal reports explicitly state that the report is for Wells Fargo.

{¶32} Although appellant was listed as the "Borrower/Client" in one of the three reports, the reports do not state that the "Borrower" or "Borrower/Client" is an intended user, nor that the report was prepared for the Borrower or Borrower/Client's intended use.

{¶33} Accordingly, appellant's reliance on the USPAP and the definition of "intended user" set forth therein in order to establish a contract with Metro or a contractual duty or duty of care owed by Metro is misplaced.

### E. Statute of Limitations

**{¶34}** Finally, appellant argues that the trial court erred in determining that his claims were barred by the two-year statute of limitations set forth in R.C. 2305.10(A).  Appellant contends that R.C. 2305.10(A) is inapplicable, and that his claims were governed by the four-year statute of limitations set forth in R.C. 2305.09(D).

**{¶35}** Based on our determination that appellant can prove no set of facts to support his breach of contract and negligence claims, we need not consider, as an alternative basis for granting Metro's motion to dismiss, whether appellant's claims were also time-barred.

**{¶36}** For all of the foregoing reasons, appellant's sole assignment of error is overruled.

### III.   Conclusion

**{¶37}** After thoroughly reviewing the record, we affirm the trial court's judgment granting Metro's Civ.R. 12(B)(6) motion to dismiss.  Accepting the allegations in appellant's amended complaint as true, as we must, we find that appellant can prove no set of facts to support his breach of contract and negligence claims that would entitle him to relief.

**{¶38}** A review of appellant's allegations in his amended complaint reflects that (1) Metro had no contact or interaction with appellant, either before or after the appraisal was performed on July 23, 2015; (2) although Denise introduced appellant to Metro's appraiser on July 23, 2015, after which appellant "escorted [the appraiser] through the premises," Metro made clear, and appellant understood, that Metro was there to conduct an appraisal on Denise's behalf only; (3) all of appellant's communications during the process were with Wells Fargo, not Metro; and (4) although appellant was listed as a "Borrower/Client" on the appraisal report that Wells Fargo forwarded to him, appellant knew that his name was erroneously listed in the report because Metro had not conducted an appraisal on his behalf for Wells Fargo.

**{¶39}** Accordingly, the trial court properly granted Metro's motion to dismiss.

**{¶40}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

EILEEN A. GALLAGHER, A.J., and
EILEEN T. GALLAGHER, J., CONCUR