[Cite as *Bitounis v. Interactive Brokers, L.L.C.*, 2024-Ohio-2905.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CONSTANTINE BITOUNIS, ET AL., :

    Plaintiffs-Appellants, :

                            No. 113193

    v. :

INTERACTIVE BROKERS LLC, ET AL., :

    Defendants-Appellees. :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** August 1, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-971272

---

### *Appearances:*

Meyer Wilson Co., L.P.A., David P. Meyer, Courtney M. Werning, and Jared W. Connors; and Cooper Elliott, Rex H. Elliott, and Barton R. Keyes, *for appellants*.

Ulmer & Berne L.L.P., Jeffrey S. Dunlap, and Nicholas B. Wille, *for appellees*.

ANITA LASTER MAYS, J.:

## I. Procedural Background

{¶ 1} Plaintiffs-appellants Constantine Bitounis, Goudas Enterprises, Ltd., Gus Pyros, Sophocles Sophocleus, George Voutsiotis, Vivy Voutsiotis, Karvo

Companies, Inc. d.b.a. Karvo Paving Company, G&Y Group, L.L.C., Corrosion Resistance Ltd., GAADY, L.L.C., George Karvounides, individually and as custodian of an account FBO Eleftheria Varvaras, Anna Karvounides, Yianni Karvounides, Dina Karvounides, Evangelos Varvaras, Angela Varvaras, Haralambos Gonos, Timothy Moff, Auctus Properties, L.L.C., Alexandra Voutsiotis, Susan George, and plaintiff-intervenor-appellant Sparkling Spirits Entertainment, L.L.C. (collectively "appellants"), appeal the trial court's dismissal with prejudice of appellants' first amended complaint ("FAC") for failure to state a claim under Civ.R. 12(B)(6) in favor of defendants-appellees Interactive Brokers, L.L.C. ("Interactive") and Interactive Brokers, a fictious name.[1] We reverse and remand for further proceedings.

{¶ 2} On November 11, 2022, appellants filed a single count lawsuit against appellees alleging that appellees participated, aided, and abetted in violating R.C. 1707.43 of the Ohio Securities Act, R.C. Ch. 1707 et seq. On December 26, 2022, the parties stipulated additional time for appellees to answer or plead.

{¶ 3} On January 26, 2023, appellees filed a motion to dismiss the complaint pursuant to Civ.R. 12(B)(6). Appellees contended the complaint failed to state a claim under R.C. 1707.43. On February 9, 2023, appellants filed an

---

[1] "Defendant Interactive Brokers is a fictitious name used by Defendant Interactive Brokers, LLC. Acts and omissions attributed to 'Defendants' in this First Amended Complaint were committed by Defendant Interactive Brokers, LLC. Based on the unlawful actions of Interactive Brokers, LLC, by naming the fictious name Interactive Brokers as a defendant, plaintiffs intend to pursue relief against all entities that use that fictitious name or that used that fictitious name during the times relevant to this matter." FAC, ¶ 29.

unopposed motion for extension of time, and on February 23, 2023, appellants filed the FAC.[2]

On March 9, 2023, appellees moved to dismiss the FAC. On March 21, 2023, appellants filed an unopposed 14-day motion to extend the time to respond to the dismissal motion. On April 6, 2023, appellants filed their opposing memorandum. On April 13, 2023, appellees replied instanter.

{¶ 4} On August 10, 2023, the trial court allowed Sparkling Spirits Entertainment, L.L.C. ("Sparkling") to intervene as a new party plaintiff and advised that appellees' pending motion to dismiss the FAC would apply to Sparkling. On August 15, 2023, Sparkling joined the opposition to the pending dismissal motion.

{¶ 5} On August 24, 2023, the trial court issued a summary denial granting appellees' motion to dismiss with prejudice.

{¶ 6} Appellants appeal.[3]

## II. Assignment of Error

{¶ 7} Appellants present a single assigned error: the trial court erred by dismissing the FAC for failure to state a claim under Civ.R. 12(B)(6).

## III. Standard of Review

{¶ 8} "[A] court's factual review is confined to the four corners of the complaint." *Dabney v. Metro Appraisal Group, Inc.*, 2018-Ohio-4601 ¶ 15 (8th

---

[2] The original defendants were Interactive Brokers LLC, IBG LLC, and Interactive Brokers, is "a fictious name." IBG LLC was not listed as a defendant in the FAC.

[3] Except where appropriate, references to appellants includes intervenor-appellant Sparkling Spirits Entertainment, L.L.C., which did not file separate briefs.

Dist.). Our standard of review on a Civ.R. 12(B)(6) motion to dismiss is de novo. "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. Under a de novo analysis, we must accept all factual allegations of the complaint as true, and all reasonable inferences must be drawn in favor of the nonmoving party." (Citations omitted.) *NorthPoint Props. v. Petticord*, 2008-Ohio-5996, ¶ 11 (8th Dist.).

{¶ 9} "'As long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.'" *Woods v. Sharkin*, 2022-Ohio-1949, ¶ 28 (8th Dist.), quoting *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991). Nonetheless, a court may not grant a Civ.R. 12(B)(6) dismissal simply because it doubts the plaintiff will prevail. *Id.*, citing *Bono v. McCutcheon*, 2005-Ohio-299, ¶ 8 (2d Dist.).

## IV. Discussion

{¶ 10} According to the FAC, appellants invested approximately $25 million in an investment scheme operated by decedent Constantine Antonas ("Antonas") who allegedly defrauded appellants of $25 million. Antonas purported to be an investment advisor and solicited appellants who are members of the Northeast Ohio Greek Orthodox community. Antonas sold interests in a specious private investment hedge fund called Epitome Investment Fund LP ("Epitome").

{¶ 11} The interests were allegedly unregistered securities in violation of Ohio Securities law. Appellants claimed that "Antonas, with the assistance, aid,

support, and participation of Defendants, embarked on a fraudulent scheme to trade the investors' money in highly leveraged and speculative commodities and other investments." FAC, ¶ 1-3. "Much of this unlawful trading activity occurred in the Epitome investment account at Interactive Brokers, and by spring 2021, all of the investments in the account were worthless." *Id.*

{¶ 12} Antonas provided a private placement memorandum ("PPM") to the investors:

> When securities are sold via private placement, the private placement memorandum, or "PPM," generally serves as the offering document. *See Kelley v. Safe Harbor Managed Account 101, Ltd.*, 31 F.4th 1058, 1063 n.4 (8th Cir. 2022) ("The information included in a PPM is similar to that included in a prospectus for a nonexempt offering."). As such, the PPM is a critical document in the process of selling a private placement, as it markets the upside and (ideally) discloses the risks of the investment to potential investors. *See, e.g., Rainier DSC 1, LLC v. Rainier Capital Mgmt., LP*, 546 F. App'x 491, 492 (5th Cir. 2013) ("The PPM was used as the marketing document for potential investors. It outlined the parties to the transaction, the risks of the investment, and described the property.").

Brief of appellant, p. 2-3. The PPM listed Interactive as the broker used by Epitome to maintain the accounts and "clear securities transactions."

{¶ 13} The FAC described the history of appellants' interactions with Antonas, Antonas's lack of professional qualifications, fraudulent acts, and illegal activities that violated R.C. Chapter 1707, including:

> R.C. 1707.44(B)(4):
>
> (B) No person shall knowingly make or cause to be made any false representation concerning a material and relevant fact, in any oral statement or in any prospectus, circular, description, application, or written statement, for any of the following purposes: . . . (4) selling any securities in this state. . . .

R.C. 1707.44(G):

No person in purchasing or selling securities shall knowingly engage in any act or practice that is, in this chapter, declared illegal, defined as fraudulent, or prohibited. . . .

R.C. 1707.44(C)(1):

(C) No person shall knowingly sell, cause to be sold, offer for sale, or cause to be offered for sale, any security which comes under any of the following descriptions:  (1) Is not exempt under section 1707.02 of the Revised Code, nor the subject matter of one of the transactions exempted in section 1707.03, 1707.04, or 1707.34 of the Revised Code, has not been registered by coordination or qualification, and is not the subject matter of a transaction that has been registered by description; . . .

R.C. 1707.44(A)(1) and 1707.44(A)(2):

(A)(1) No person shall engage in any act or practice that violates division (A), (B), or (C) of section 1707.14 of the Revised Code, and no salesperson shall sell securities in this state without being licensed pursuant to section 1707.16 of the Revised Code.

(2) No person shall engage in any act or practice that violates division (A) of section 1707.141 or section 1707.161 of the Revised Code.

{¶ 14} The FAC further shows that, due to Interactive's mandatory compliance monitoring obligations, appellees knew or should have known they were supporting Antonas' illicit activities. The PPM listed appellees as brokers that would have required appellees' agreement.  The PPM "was riddled with red flags" that were or should have been obvious to appellees.  The address for Epitome was Antonas's home address.  No fund auditor or administrator was listed.  Antonas was only 20 years of age and was never qualified or licensed as an investment advisor to sell securities.  The Form D SEC filing incorrectly listed Epitome as a New York

corporation instead of Delaware and the corporate filing was made only seven days prior to the opening of Epitome.[4]

{¶ 15} Appellants maintained that appellees' services were not passive account services that allowed account holders free reign. "The 2013 customer agreement between Interactive and Antonas empowered Interactive to take various actions including suspending or freezing the account for suspicious activity." FAC, ¶ 46. "In line with these provisions, [Interactive] perform[s] a compliance function by which they actively monitor accounts and trading for red flags and potential illegal activity." *Id.*

{¶ 16} Despite appellees' knowledge and/or reckless disregard of Antonas's mismanagement and misappropriation of the account funds, appellees allowed Antonas to continue using appellees' "name, reputation, facilities, personnel, agents, and employees" to conduct his activities. In fact, in August 2017 and March 2018, appellees allowed Antonas to make urgent withdrawals exceeding the maximum permitted for the account, further depleting the funds.

{¶ 17} Appellants alleged that appellees did not ask Antonas for "audited annual financials, balance sheets, governing documents, and the reason that the cashiering activity [on the account] had been so divergent from the stated finals"

---

[4] "Formally entitled 'Form D-Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption,' a Form D is a form created by the Securities and Exchange Commission ("SEC") that requests certain basic information about the issuer and offering. *See* Section 239.500, Title 17, C.F.R. Issuers initially file the Form D with the SEC. *See* Section 230.503, Title 17, C.F.R. Ohio law mandates that issuers also file the Form D with the Division. R.C. 1707.03(X)(1)." *Blue Flame Energy Corp. v. Ohio Dept. of Commerce*, 2006-Ohio-6892, ¶ 3 (10th Dist.), fn. 1

until June 2021. By that time, the $25 million deposited had been reduced to $7,874. Several appellants set up an October 4, 2021 meeting with Antonas who was found deceased that day.

{¶ 18} The sole count of the complaint was for violation of R.C. 1707.43 for participating in and aiding and abetting violations of R.C. Chapter 1707 of the Ohio Securities Act. Appellants alleged that "[a]s a direct and proximate result of the unlawful sales, [appellants] have suffered substantial damages, including the complete loss of the millions of dollars they invested. . . . [Appellees] participated in and aided Antonas in making the unlawful sales to the plaintiffs. As such they are jointly and severally liable to [appellants] under R.C. 1707.43." FAC ¶ 69-70. The judgment demanded was for damages exceeding $25,000, attorney fees, costs, expenses, and all other relief the court may deem proper.

{¶ 19} Appellees respond that the FAC was properly dismissed, the trial court was not required to provide an opinion setting forth the reasoning, and the FAC fails for the same reasons that the appellees moved to dismiss the original complaint — the allegations did not claim or establish appellees' participation in Antonas's activities regarding Epitome, the PPM, solicitation and sales of interests, or collection of funds.

{¶ 20} Appellees claim the failure to allege that appellants were purchasers of securities sold through the Interactive account is fatal to their claims. They contend that R.C. 1707.43 "only permits claims for rescission pertaining to the

unlawful *sales* of securities that are brought *by the purchasers* of those securities." (Emphasis in original.)  Brief of appellees, p. 6.

{¶ 21} Appellees further claim that the FAC attributes the unlawful participation or aiding in the unlawful sale of securities to Interactive and not appellees IBG LLC or Interactive Brokers, a fictious name. We observe that paragraph 29 of the FAC identified IBG LLC as a nonparty and explained that Interactive Brokers, LLC remained a party and that the fictious name Interactive Brokers remained to allow appellants to pursue relief against all entities operating under the fictious name. Appellees reject the latter position because there are no allegations regarding any other entity via alter ego or other theory.

{¶ 22} Appellees additionally assert that appellants have abandoned their FAC claims and now seek to reinvent the FAC claims to provide a viable legal theory. Appellants "now attempt to hold Interactive Brokers secondarily liable solely on the basis of the allegation that Antonas provided potential investors a [PPM] that named Interactive Brokers as the anticipated clearing broker and providing of a trading account for Epitome."  Thus, appellants now suggest that Interactive Brokers "lent its name for use in the Private Placement Memorandum in order to assist Antonas's marketing efforts and to induce investors to purchase partnership interests in Epitome."  Appellants maintain that the only economic benefits received were no different than any other financial institution would from account deposits "after the sales at issue."

{¶ 23} We reiterate that this court's focus on appeal is whether, viewing only the information set forth within the four corners of the FAC, accepting all the factual allegations of the FAC as true, drawing all reasonable inferences in favor of appellants as the nonmoving party, appellants can prove no set of facts that entitle them to relief. (Citations omitted.) *Dabney v. Metro Appraisal Group, Inc.*, 2018-Ohio-4601, ¶ 15 (8th Dist.).

{¶ 24} Appellants' case is based on a single count: appellees violated R.C. 1707.43 for participating in and aiding and abetting violations of the Ohio Securities Act, R.C. Ch. 1707 et seq. The statute sets forth the remedies for a purchaser harmed by an unlawful sale. Appellants seek rescission.

{¶ 25} R.C. 1707.43(A) in effect at the time the complaint was filed[5] entitled "Remedies of purchaser in unlawful sale" "allows the purchaser to void an unlawful sale or contract for sale made in violation of R.C. Chapter 1707." *Boyd v. Kingdom Trust Co.*, 2018-Ohio-3156, ¶ 7. The statute provides:

> (A) Subject to divisions (B) and (C) of this section, every sale or contract for sale made in violation of Chapter 1707 of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person that has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to the purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller of the securities sold or of the contract made, for the full amount paid by the purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision.

---

[5] The 2023 amendment by H.B. 33 deleted "in person or in open court" preceding "of the securities" in the second sentence of (A). R.C. 1707.43.

{¶ 26} "'The Ohio Securities Act, generally referred to as Ohio Blue Sky Law, was adopted on July 22, 1929, to prevent the fraudulent exploitation of the investing public through the sale of securities.'" *Perrysburg Twp. v. Rossford*, 2004-Ohio-4362, ¶ 9, quoting *In re Columbus Skyline Secs., Inc.*, 74 Ohio St.3d 495, 498 (1996). "This goal is best accomplished through a broad definition of 'securities.'" *Id.*, quoting *id. See also Reves v. Ernst & Young*, 494 U.S. 56, 60-61 (1990). *Securities & Exchange Comm. v. W. J. Howey Co.*, 328 U.S. 293, 299, (1946) ("[T]he definitions under the securities act should not be static but should be flexible 'to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.'"). The Act "is a remedial act that must be liberally construed to effectuate its purposes." *Stuckey v. Online Resources Corp.*, 909 F.Supp.2d 912, 948 (S.D.Ohio 2012), citing *In re Columbus Skyline Secs.*, 74 Ohio St.3d 495, 499 (1996) ("In order to further the intended purpose of the Act, its securities anti-fraud provisions must be liberally construed.").

{¶ 27} R.C. 1707.43(A) imposes joint and several liability on "the person making the contract for sale or the sale of illegal securities, 'every person that has participated in . . . such sale or contract for sale,' and 'every person that has . . . aided the seller in any way in making such sale or contract for sale.'" *Boyd,* 2018-Ohio-3156, at ¶ 10, quoting R.C. 1707.43(A). "The plain language" of the statute "requires a person to have some nexus with the sale of illegal securities." *Id.* "The statute does not create liability absent some conduct that aided a seller in a sale of illegal securities." *Id.*

**{¶ 28}** While *Boyd,* a case cited by appellants, is instructive, the Court's focus was narrow. *Boyd* addressed a question certified by the Sixth Circuit Court of Appeals in a pending Ponzi scheme case.

> Ohio residents Cynthia Boyd and Thomas Flanders, the plaintiffs-petitioners in this matter, are the alleged victims of a Ponzi scheme operated by William Apostelos. According to petitioners, Apostelos and his associates formed Midwest Green Resources, L.L.C., and WMA Enterprises, L.L.C., as the vehicles for offering illegal securities to investors. Apostelos is not a party to this case.

> Apostelos allegedly persuaded Boyd, Flanders, and others to open self-directed individual retirement accounts ("IRAs") to invest in equity interests in Midwest Green Securities and promissory notes issued by WMA Enterprises. Boyd opened a self-directed IRA account with defendant-respondent Kingdom Trust Company. Flanders opened a self-directed IRA account with defendant-respondent PENSCO Trust Company, L.L.C. Once the accounts were established, Apostelos asked investors to direct the trust companies to purchase his securities or to execute powers-of-attorney giving him the ability to direct the trust companies to purchase his securities using the investors' IRA assets. Apostelos allegedly used the money raised from these investors to pay earlier investors and promoters and to fund his own personal expenses.

> After the Ponzi scheme unraveled, Boyd and Flanders filed a class-action lawsuit in the United States District Court for the Southern District of Ohio, Western Division, seeking to hold Kingdom Trust and PENSCO Trust liable under the Ohio Securities Act, R.C. 1707.01 et seq., for their alleged roles in the scheme. The complaint does not allege that the trust companies had any role in Apostelos's Ponzi scheme aside from purchasing the unlawful securities at the investors' direction. Nor does it allege that the trust companies knew or had reason to know that Apostelos was perpetrating a fraud.

> Kingdom Trust and PENSCO Trust filed motions to dismiss for failure to state a claim. The district court granted the motions. In the absence of any allegation that the trust companies acted outside the scope of routine banking activities, the district court held that their mere involvement in the transactions is insufficient to impose liability on them under the Ohio Securities Act. *Boyd v. Kingdom Trust Co.*, 221 F.Supp.3d 975, 979 (S.D.Ohio 2016).

*Boyd* at ¶ 2-5.

{¶ 29} The certified question was whether R.C. 1707.43(A) "imposes joint and several liability on persons who aided in the purchase of illegal securities but did not participate or aid in the sale of the illegal securities." *Id.* at ¶ 1.

{¶ 30} Ohio courts have determined that the mere participation of a financial institution in a transaction, "absent any aid or participation in the sale of illegal securities, does not give rise to liability under R.C. 1707.43(A)." *Boyd*, 2018-Ohio-3156, at ¶ 14.

> "'[T]he willingness of a bank to become the depository of funds does not amount to a personal participation or aid in the making of a sale.'" *Wells Fargo Bank v. Smith*, 12th Dist. Brown No. CA2012-04-006, 2013-Ohio-855, ¶ 29, quoting *Hild v. Woodcrest Assn.*, 59 Ohio Misc. 13, 30, 391 N.E.2d 1047 (C.P.1977); *see also Boomershine v. Lifetime Capital, Inc.*, 2d Dist. Montgomery No. 22179, 2008-Ohio-14, ¶ 15 (plaintiffs failed to show that bank serving as escrow agent aided in the sale of investments).

*Id.*

{¶ 31} The Court concluded that "R.C. 1707.43(A) does not impose joint and several liability on a person who, acting as the custodian of a self-directed IRA, purchased — on behalf and at the direction of the owner of the self-directed IRA — illegal securities." *Id.* at ¶ 16. Nevertheless, the Court specified that there was nothing in its holding that would insulate a self-directed IRA custodian "who colludes with the seller in an unlawful sale of securities or actively participates or aids in the sale of illegal securities from liability." *Id.* at ¶ 15. "We leave it to the Sixth Circuit to decide whether the facts as alleged in petitioners' complaint are

sufficient to survive dismissal at the pleading stage under the legal standard we announced today." *Id.*

{¶ 32} Appellees claim that it merely served as a depository for Antonas's self-directed activities. ""[T]he willingness of a bank to become the depository of funds does not amount to a personal participation or aid in the making of a sale."" *Id.*, quoting *Wells Fargo Bank v. Smith*, 2013-Ohio-855, ¶ 29 (12th Dist.), quoting *Hild v. Woodcrest Assn.*, 59 Ohio Misc. 13, 30 (C.P.1977); *see also Boomershine v. Lifetime Capital, Inc.*, 2008-Ohio-14, ¶ 15 (2d Dist.) (plaintiffs failed to show that bank serving as escrow agent aided in the sale of investments).

{¶ 33} Fatal to the *Boyd* complaint was the failure to allege that defendants played a role in the Ponzi scheme except for "purchasing the unlawful securities at the investors' direction" or that the defendants "knew or had reason to know that Apostelos was perpetrating the fraud." *Boyd*, 2018-Ohio-3156, at ¶ 4, 5. In the instant case, the FAC described appellees' active involvement pursuant to its contract with Antonas for Epitome and appellees' requisite monitoring activities. FAC 46. Appellees were listed in the PPM as the broker for the Epitome securities transactions and the holder of the Epitome account. FAC 36. It is also alleged that appellees "demanded to review and approve certain documents and information" including the PPM that stated appellees would serve as the broker for Epitome "before allowing Antonas to open an account for Epitome." FAC, ¶ 37.

{¶ 34} Appellants contended that appellees ignored the errors or missing information in the documents submitted to appellees by Antonas such as: Epitome's

address was Antonas' residence, the spaces for identifying the fund administration and auditor were blank, proof of an established account at another institution for Epitome was a bank statement indicating a $100 balance in an account opened several days prior to the submission. FAC 38-40. There was also 20-year-old Antonas's lack of qualifications or license as an investment advisor, his failure of the FINRA/North American Securities Administrators Association Series 65 exam three time. The SEC Form D public record reflecting the wrong state of business organization and was dated only seven weeks before Antonas attempted to open an account with appellees.

{¶ 35} There is also the claim that

> "[m]any of the plaintiffs' purchases of Epitome limited partnership interests occurred after Defendants knew or should have known (because of their mandatory compliance monitoring) that Antonas' actions regarding the Epitome brokerage account were unlawful or fraudulent. Indeed, Defendants ultimately did identify red flags surrounding the account and limited its trading activity, but Defendants did so much later than they should have."

> "Defendants' inadequate and improper compliance monitoring of the Epitome account aided Antonas in selling Epitome limited partnership interests to the Plaintiffs and engaging in the unlawful trading."

FAC, ¶ 48-49.

{¶ 36} Moreover, appellants alleged that appellees "participated in and aided Antonas in making the unlawful sales to plaintiffs. As such, they are jointly and severally liable to Plaintiffs under R.C. 1707.43." FAC, ¶ 71.

{¶ 37} When construing all inferences in a light most favorable to appellants, the allegations set forth in the complaint were legally sufficient to set forth a claim

for relief under R.C. 1707.43(A). "'As long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.'" *Woods v. Savin*, 2022-Ohio-1949, ¶ 28 (8th Dist.), quoting *York*, 60 Ohio St.3d at 143, 145, and 573.

{¶ 38} The assignment of error is sustained.

## V. Conclusion

{¶ 39} The trial court's judgment is reversed and remanded for further proceedings pursuant to this opinion.

It is ordered that appellants recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EMANUELLA D. GROVES, J., CONCURS;
LISA B. FORBES, P.J., DISSENTS (WITH SEPARATE OPINION)


LISA B. FORBES, P.J., DISSENTING:

{¶ 40} Respectfully, I dissent. The Ohio Supreme Court has made clear that without "aid or participation in the sale of illegal securities," liability will not arise under R.C. 1707.43(A). *Boyd v. Kingdom Trust Co.,* 2018-Ohio-3156, ¶ 14. "[M]ere

participation in a transaction" has been found not to be sufficient to demonstrate active participation in the sale of an illegal security. *Boyd* at ¶ 14.

{¶ 41} Here, the appellants allege that "Antonas sold unregistered securities (i.e., interest in a private investment fund, Epitome) to" them. I would find that the factual allegations in the first amended complaint regarding the appellees amount to allegations that they merely participated as brokers after Antonas sold the interests in Epitome to the appellants, not that they aided Antonas or participated with Antonas in making the sales. Consequently, I would affirm the trial court's dismissal of the first amended complaint pursuant to Civ.R. 12(B)(6) for failure to state a claim under R.C. 1707.43 upon which a relief may be granted.